# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Ignacio Tapia-Moreno, et al.,<br><br>    Defendants. | No. CR-13-00519-001-TUC-JGZ (LAB)<br><br>**ORDER** |

On March 26, 2014, Magistrate Judge Leslie Bowman issued a Report and Recommendation (R&R) (Doc. 68) recommending that Defendants' joint Motion to Suppress Statements and Evidence for *Miranda* Violation and Involuntariness (docs. 22, 43, 53, and 55) and joint Motion to Suppress Statements and Evidence for Fourth Amendment Violations (docs. 23 and 43) be denied. In a July 10, 2014, Supplemental R&R, the magistrate made additional credibility determinations regarding conflicting witness testimony. (Doc. 119.) Defendants Sanchez-Avitia and Tapia-Moreno filed objections to the March 26, 2014 R&R (docs. 86 and 87), and Sanchez-Avitia objected to the Supplemental R&R. (Doc. 121.) Having found a conflict existed between the R&R and the Supplemental R&R, this Court held an evidentiary hearing on July 18, 2014 to resolve whether Sanchez-Avitia invoked her right to remain silent. (Doc. 123.) After considering the evidence presented at that hearing, as well as the entire record in this matter, including the objections raised by the Parties, the Court will adopt the R&R and

will adopt the Supplemental R&R in part and deny it in part.[1]

## STANDARD OF REVIEW

The standard of review applied to a magistrate judge's R&R is dependent upon whether a party files objections, and the Court need not review portions of a report to which a party does not object. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## FACTUAL BACKGROUND

Defendants have not objected to the Magistrate Judge's summation of the evidence. Accordingly, the Court presumes any findings of fact are correct. *See Orand v. United States,* 602 F.2d 207, 208 (9th Cir. 1979).

## LEGAL ANALYSIS

A. <u>Defendants were detained for *Miranda* purposes upon being handcuffed and formally arrested.</u>

Defendants object to the R&R's finding that they "were not in custody for *Miranda* purposes until they were handcuffed and formally arrested." (Doc. 68 at 10, lns. 20-21; Doc. 86 at 2-5; Doc. 87 at 5-12.) Defendants contend they were in custody for *Miranda* purposes when they were referred to the checkpoint's secondary inspection. (Doc. 86 at 2; Doc. 87 at 1.) Tapia-Moreno further argues that the magistrate judge failed to consider all the factors triggering his detention for *Miranda* purposes, such as the fact that he was (1) ordered to secondary inspection, (2) separated from his children and

---

[1] On July 25, 2014, on the eve of trial, Tapia-Moreno resolved the charges against him by pleading guilty to the charge of misprision of a felony pursuant to a written plea agreement with the government. Although Tapia-Moreno's motion to suppress and objections are now rendered moot, this Order considers Tapia-Moreno's arguments as they are intertwined with and often joined in by Defendant Sanchez-Avitia.

immigration documents, (3) interviewed multiple times, (4) not free to leave, (5) confronted with evidence of guilt, (6) surrounded by law enforcement at a heavily manned checkpoint, and (7) exposed to a "degree of pressure" consistent with detention.[2] Finally, both Defendants maintain that federal agents employed an unlawful "two-step interrogation" tactic by deliberately delaying their formal arrest until incriminating statements were made. *See Missouri v. Seibert*, 542 U.S. 600 (2004); *see also United States v. Barnes*, 713 F.3d 1200 (9th Cir. 2013).

*Miranda v. Arizona,* 384 U.S. 436 (1966), and its progeny govern the admissibility of statements made during custodial interrogation in both state and federal proceedings. Statements made while a defendant is in "custody or otherwise deprived of [his] freedom of action in any significant way" which are not preceded by *Miranda* warnings are inadmissible in evidence. *Id.* at 444. Of course, not all questioning by law enforcement officers triggers the warning requirement. "The *sine qua non* of *Miranda* is custody." *Id.* A defendant is considered to be "in custody" for purposes of *Miranda* if a reasonable person would believe that he or she was not free to leave. *See United States v. Kim,* 292 F.3d 969, 973–74 (9th Cir. 2002) (citing *United States v. Beraun–Panez,* 812 F.2d 578, 580 (9th Cir.1987)).

Generally, a brief detention at the border by immigration and customs officials of persons presenting themselves for admission to the United States is not custody, even though such persons are not free to leave or to refuse to be searched. *United States v. Butler,* 249 F.3d 1094 (9th Cir. 2001). In determining whether detention at a border patrol checkpoint rises to the level of "custody" within the meaning of *Miranda,* courts must examine the "objective circumstances of the interrogation." *Id.* (citing *Stansbury v.*

---

[2] Sanchez-Avitia did not join Tapia-Moreno's objections. (Docs. 86-87.) Tapia-Moreno also objects to the magistrate's implicit finding that he approached the checkpoint voluntarily, claiming there is no evidence that he knew the checkpoint existed or that it was operational. (Doc. 87 at 8, n. 6.) Tapia-Moreno's knowledge of these facts is not determinative of whether he voluntarily approached the checkpoint; rather, the evidence shows that Tapia-Moreno drove the vehicle to the checkpoint's primary inspection. Tapia-Moreno does not claim he was driving the vehicle against his free will. Moreover, there is no evidence that law enforcement agents compelled either Defendant to go to the checkpoint. Accordingly, the Court finds the Defendants appeared at the checkpoint voluntarily.

*California,* 511 U.S. 318, 323 (1994)). Those circumstances include the language used by the officers, the physical characteristics of the place where the question occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt. *Id.* (citing *United States v. Hudgens,* 798 F.2d 1234, 1236 (9th Cir. 1986)). "Although the existence or non-existence of probable cause might be one factor to consider in determining someone's custodial status in the twilight zone between detention and custody, what ultimately matters to the determination of whether *Miranda* is triggered is custody." *Id.*

Examining the "objective circumstances" of the interrogation, the Court finds that Tapia-Moreno and Sanchez-Avitia were not in custody for *Miranda* purposes until they were handcuffed and formally arrested. The Court concurs with the Magistrate Judge's factual analysis and finds Tapia-Moreno's additional objections unpersuasive. Tapia-Moreno's referral to secondary inspection and the fact that he was not free to leave do not trigger *Miranda*: "The case books are full of scenarios in which a person is detained by law enforcement officers, is not free to go, but is not 'in custody' for *Miranda* purposes." *Butler*, 249 F.3d at 1098 (referred to secondary at port of entry); *see also United States v. RRA-A*, 229 F.3d 737, 743 (9th Cir. 2000) (juvenile referred to secondary and then detained in inspector's office was not detained for *Miranda* purposes until handcuffed); *United States v. Doe,* 219 F.3d 1009, 1014 (9th Cir. 2000) (border crossing case in which detention for *Miranda* triggered only when defendant placed in a locked cell). The checkpoint's physical surroundings, such as its canopy, generator, law enforcement vehicles, or the fact that it was allegedly "heavily manned," do not trigger "custody" as these facts do not distinguish this case from other factually similar cases in which *Miranda* was not triggered until a showing of restraint on a defendant's freedom of movement occurred.[3] *See Butler*, 249 F.3d at 1097 (port of entry facility with multiple

---

[3] Tapia-Moreno's claim that the checkpoint was "heavily-manned" and had "agent vehicles" is tentative at best as the evidence shows that six to seven agents were on shift and their marked Border Patrol vehicles were parked in a separate area. (Record Transcript "RT" of Motion to Suppress Hearing dated 2/20/14 at 57, 77, 92.)

1 agents and drug dog); *United States v. RRA-A*, 229 F.3d at 741 (port of entry); *United States v. Doe,* 219 F.3d at 1012 (port of entry).  Moreover, Agents Seed and Merriman's questioning of Tapia-Moreno on "multiple occasions" does not sway the Court's analysis as this questioning was very short, lasting approximately two-to-five minutes each time. (Doc. 68 at 2-4; RT 2/20/14 at 19-20.)   The extent to which Tapia-Moreno was "confronted with evidence of guilt" was minimal as he "immediately" began to confess once Agent Merriman told him that his son stated that the three other children were not part of the family.  (RT 2/20/14 at 73.)  Similarly, Tapia-Moreno's separation from his children did not constitute an undue "degree of pressure."  Tapia-Moreno was taken only 15-20 feet away from the vehicle containing his children, and Sanchez-Avitia was either in the vehicle or sitting on a bench next to the vehicle throughout the pre-*Miranda* questioning.[4]  (RT 2/20/14 at 68: 17-19; 102: 15-19.)  Finally, the agents' possession of Tapia-Moreno and the children's immigration documents did not "deprive[] [him] of [his] freedom of action in any significant way."[5] *Miranda,* 384 U.S. at 444.  Accordingly, the Court concludes that Defendants were not placed in "custody" for purposes of *Miranda* until they were arrested and handcuffed, and their objections are overruled.

The Court rejects Defendants' unlawful "two-step interrogation" argument as misplaced.  *See Seibert*, 542 U.S. at 600.  An unlawful "two-step interrogation" occurs "when a law enforcement officer interrogates a suspect in custody but does not warn the suspect of his *Miranda* rights until after he has made an inculpatory statement . . . ." *United States v. Barnes,* 713 F.3d 1200, 1205 (9th Cir. 2013); *see also United States v. Williams,* 435 F.3d 1148, 1159-60 (9th Cir. 2006) (a two-step interrogation refers to a situation where an officer deliberately questions a suspect without *Miranda* warnings,

---

[4] Agent Seed testified that Tapia-Moreno's distance from the vehicle was "20 yards." (RT 2/20/14 at 16.)  The Court finds this estimate unlikely given the limited space provided for the checkpoint on Highway 90.

[5] It is unknown whether the checkpoint agents had Tapia-Moreno's immigration documents, as Agent Seed testified that it was his common practice to return them upon secondary referral, but he could not recall if he had done so in this case.  (RT 2/20/14 at 34.)

obtains a confession or inculpatory admission, offers *Miranda* warnings mid-stream - after the suspect has admitted involvement or guilt, and then has the suspect repeat his confession or elaborate on his earlier statements). In the present case, the Court has concluded that Defendants were not in custody until the time of their arrest. Therefore, the Court also concludes that an impermissible "two-step interrogation" did not occur.[6] *See Seibert, 542 U.S. at 600* (finding "two-step interrogation" where defendant was arrested and interrogated at police station for 30-40 minutes, given a break, and then advised of her *Miranda* rights); *see also Barnes*, 713 F.3d at 1203 ("Our initial consideration of the *Miranda* issue rests on the resolution of two questions: whether the interrogation was custodial and whether the interrogation was 'deliberate two-step' approach.") Accordingly, Defendants' objections on this basis are overruled.

B. <u>The checkpoint stop did not violate Defendants' Fourth Amendment rights.</u>

Tapia-Moreno and Sanchez-Avitia also assert their unlawful "two-step interrogation" argument pursuant to *Seibert*, 542 U.S. at 600, in the context of the Fourth Amendment, arguing that the checkpoint stop should be "viewed in the context of the entire [ICE] investigation" and that it was "anything but routine." (Doc. 86 at 10; Doc. 87 at 12.) Defendants argue that "the investigation in this matter had a scope and breadth that greatly exceeded the occurrences at the checkpoint" and that "any attempt to limit [Defendants'] inquiry" into "law enforcement tactics designed specifically to circumvent *Miranda*" runs afoul of the Fourth Amendment. (Doc. 87 at 12.)

However, "[t]he principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop." *United States v. Martinez–Fuerte,* 428 U.S. 543, 566–567 (1976). Such a stop is reasonable per se, so long as the

---

[6] At the suppression hearing, the Magistrate Judge heard testimony that Sanchez-Avitia was the subject of a year-long Immigration Customs and Enforcement (ICE) investigation for child smuggling. Defendants sought to examine the case agent in charge of the investigation, Richard Juarez. The Magistrate denied this request on relevancy grounds. (Doc. 58.) Defendant Tapia objects to this ruling. (Doc. 87 at 11.) The Court concurs that Agent Juarez's testimony is irrelevant to the motions to suppress. Agent Juarez had only post-arrest, post-*Miranda* contact with Defendants at the checkpoint, and no evidence suggests he directed or had contact with the checkpoint agents prior to the Defendants' arrest.

1  scope of the detention remains confined to a few brief questions, the possible production
2  of a document indicating the detainee's lawful presence in the United States, and a
3  "visual inspection of the vehicle ... limited to what can be seen without a search." *Id.* at
4  558, 562.  A vehicle may be referred to secondary inspection for further questioning
5  without individualized suspicion of criminal activity. *Id*.  Moreover, a brief detention at a
6  Border Patrol checkpoint is lawful even if it extends beyond the time required for
7  immigration inspection if there is an "articulable suspicion or minimal showing of
8  suspicion of criminal activity." *See United States v. Taylor*, 934 F.2d 218, 220-221 (9th
9  Cir. 1991).

10  The Court finds no Fourth Amendment violation.  The Court is not persuaded by Defendants' argument that the checkpoint stop was an extension of the ICE investigation. As an initial matter, the scope of the stop was reasonable, and the checkpoint agents had reasonable suspicion to further question Tapia-Moreno and Sanchez-Avitia at secondary inspection due to Tapia-Moreno's nervous behavior and the Defendants' inconsistent statements.  (Doc. 68 at 3.)  Moreover, at the suppression hearing, Defendants were permitted to cross-examine the checkpoint agents regarding their knowledge of the underlying ICE investigation as well as their contact, if any, with the ICE agents at the checkpoint.  (RT 2/20/14 at 19, 51, 78-79, 88-89, 107-108.)  The checkpoint agents testified that they had no knowledge of the investigation beyond receiving a "be on the lookout" (BOLO) alert for alien smuggling with respect to a vehicle matching Defendants' vehicle.  (RT 2/20/14 at 9, 67, 99.)  Consequently, nothing in the record suggests that the checkpoint agents were involved in the year-long ICE investigation or that ICE agents directed questioning by the agents stationed at the checkpoint.

Defendants' reliance on *Barnes* is misplaced.  Unlike *Barnes*, Tapia-Moreno and Sanchez-Avitia were not ordered by law enforcement to drive on Highway 90 and present at the checkpoint.  *See Barnes*, 713 F.3d at 1204 (noting that "Barnes did not appear voluntarily but rather was told to appear for a meeting with his parole officer under threat of revocation of parole.")  Defendants arrived at the checkpoint of their own volition and

were subjected to routine checkpoint questioning. *Martinez–Fuerte,* 428 U.S. 543, at 567. No evidence suggests that the agents in this case engaged in unlawful "tactics designed specifically to circumvent *Miranda,*" as these Defendants freely chose to travel on Highway 90 on which a fixed checkpoint happens to be located. Finding no Fourth Amendment violation, the Court overrules the objection.

C. Defendant Sanchez-Avitia did not invoke her right to remain silent, and her statements were voluntary.

Sanchez-Avitia objects to the finding that she did not invoke her right to remain silent and that her statements were voluntary. (Doc. 86 at 5-9.) Significantly, however, Sanchez-Avitia does not object to the Supplemental R&R's credibility determinations, and findings that: (1) Agent Griego read Sanchez-Avitia her rights at 5:24 p.m., just shortly after she had approached the checkpoint at 4:50 p.m.; (2) Agent Ramirez told Sanchez-Avitia that things would go better for her if she told the truth; (3) Agent Guido was never alone with Sanchez-Avitia; and (4) Agent Guido did not immediately tell her that he would take her immigration papers and her children away or imply that she had to talk for the sake of her family's well-being. (Docs. 119, 121.) The Court adopts these limited credibility determinations.

As to Sanchez-Avitia's claim that she invoked her right to remain silent, the Magistrate Judge initially found Sanchez-Avitia had not invoked her right to remain silent because "[she] did not say she wanted to remain silent or that she did not want to talk to the police." (Doc. 68 at 13, lns. 17-18.) Later, however, upon remand for credibility findings, the Magistrate Judge found that Sanchez-Avitia told Agent Griego that she did not want to speak to him and that her "version of the events [is] credible."[7] (Doc. 119 at 3, lns. 14-16.)

---

[7] In making this subsequent credibility determination, the Magistrate Judge relied heavily on the fact that Agent Griego had testified that he did not remember whether Sanchez-Avitia told him she did not want to answer questions. The Magistrate Judge concluded: "The only testimony about what occurred is that Ms. Sanchez-Avitia did not want to speak with Agent Griego and she told him so. The Court finds Sanchez-Avitia's version of the events credible." (Doc. 119 at 3.)

- 8 -

Seeking to resolve this conflict, this Court held an evidentiary hearing on July 18, 2014, at which Sanchez-Avitia and Agent Griego testified. (Doc. 132.) Sanchez-Avitia testified that when at secondary inspection, she told Agent Griego that "I didn't want to speak to him, and I wanted to remain silent." (*Id*.) She claims that Agent Griego ignored her and insisted she answer his questions about the children in her vehicle. (*Id*.) Sanchez-Avitia claims she told Agent Griego two more times that she did not want to answer questions, but he continued to ignore her. (*Id*.) Sanchez-Avitia's testimony is slightly changed from her previous testimony in which she claimed that she told Agent Griego that "I didn't want to talk, that I didn't want to say anything, and that I wasn't going to say anything." (RT 3/10/14 at 120: 11-12.) For his part, Agent Griego testified regarding his *Miranda* and Fifth Amendment training at the United States Border Patrol Academy, as well as his routine, in-field *Miranda* practices. (Doc. 132.) Agent Griego further testified that he is trained to stop "all conversation, all communication" once a person tells him that he does not want to answer his questions or that he wishes to be silent. (*Id*.) Agent Griego testified that Sanchez-Avitia's body language suggested she did not want to talk to him but that she answered his questions without hesitation. (*Id*.) Agent Griego did not recall Sanchez-Avitia stating she did not want to answer his questions and testified that at no point during their interaction did he feel compelled to stop questioning her based on his training. (*Id*.)

*1. Sanchez-Avitia did not invoke her right to remain silent.*

Had Sanchez-Avitia "told [Agent Griego] that [she] didn't want to talk, that [she] didn't want to say anything, and that [she] wasn't going to say anything" (RT 3/10/14 at 120: 11-12), Sanchez-Avitia would have unambiguously invoked her right to remain silent. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (noting in custodial interrogation context that "[defendant] did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his 'right to cut off questioning.'") (internal citation and quotation omitted). Whether Sanchez-Avitia did in fact invoke her right to remain

silent is a credibility issue. This Court concludes that Sanchez-Avitia is not credible and that she did not invoke her right to remain silent.

The Court notes that Sanchez-Avitia's testimony to this Court was plagued by lies. She lied to law enforcement about the children in her vehicle, their identity, and their citizenship, for the purpose of avoiding criminal charges. During her cross-examination, she reluctantly admitted to telling these lies to the Border Patrol agents at the checkpoint.[8] Notably, the Magistrate Judge concluded that Sanchez-Avitia did not testify truthfully at the suppression hearing before the magistrate. The Magistrate Judge found that Sanchez-Avitia was not believable when she testified that Agent Ramirez said it would be "better for her family and for her family if she spoke to the agents" or that she was left alone with Agent Guido and that he threatened to take her immigration papers and that CPS would take her children if she did not cooperate. (Doc. 119 at 4.) Sanchez-Avitia's claim that Agent Griego did not *Mirandize* her was rejected by the Magistrate, as was her claim that her interrogation lasted four hours, when the evidence showed it lasted no more than 90 minutes. (Doc. 119.) In rejecting these claims, the Magistrate Judge found Sanchez-Avitia was "agitated," "upset and nervous," at the checkpoint and "likely does not remember all of the details of her apprehension and interrogation." (Doc. 119 at 3.)

Finally, the Court finds that the timing of Sanchez-Avitia's alleged invocation weighs against a finding that her invocation of rights was credible. Sanchez-Avitia claims she invoked her right to remain silent at secondary inspection when Agent Griego was asking biographical questions about the children in her vehicle. (RT 2/20/14 at 103; doc. 132.) At this time, however, Sanchez-Avitia was still trying to pass-off the illegal children as her own and was still, presumably, hopeful that her answers regarding the

---

[8] In particular, Sanchez-Avitia admitted lying to Agent Seed when she claimed the three illegal alien children in her vehicle were her own and that they were United States citizens. (RT 3/10/14 at 130.) She admitted to lying when she falsely presented her children's birth certificates to the checkpoint agents. (*Id.*)

falsely presented birth certificates would convince law enforcement that the illegal alien children were her own United States citizen children.  Sanchez-Avitia testified to this effect when she admitted that she answered questions about the birth certificates because she wanted to get through the checkpoint without being found out and arrested.  (Doc. 132.)  This admission not only contradicts her claim that she invoked her rights at secondary, it demonstrates a calculated interest in not invoking her rights at that particular time.

Agent Griego's inability to recall Sanchez-Avitia's precise statements to him at the checkpoint does not change the Court's conclusion regarding Sanchez-Avitia's credibility.  Although Agent Griego could not recall whether Sanchez-Avitia said she did not want to talk, this Court finds Agent Griego's testimony regarding his *Miranda* training and in-field practice credible.  *See United States v. Whitworth,* 856 F.2d 1268, 1278 (9th Cir.1988) (affirming denial of suppression motion where district judge, "presented with conflicting facts, credited the testimony" of FBI agents).  Agent Griego testified that he is trained to stop "all conversation, all communication" when a person tells him that he does not want to answer any questions. (Doc. 132.)  He further testified that throughout his interaction with Sanchez-Avitia, he never felt compelled to stop questioning her based on his *Miranda* training.  (*Id*.)  Sanchez-Avitia's poor credibility and unreliable memory makes her an untrustworthy witness, and the Court is satisfied that Agent Griego's routine, in-field *Miranda* practice would have been triggered had Sanchez-Avitia indeed spoken the words she now claims she said.

In sum, having observed Sanchez-Avitia's demeanor during her testimony and having considered her admitted instances of dishonesty and memory lapses as well as the Magistrate Judge's conclusion that Sanchez-Avitia testified untruthfully at the Suppression hearing, this Court finds incredible Sanchez-Avitia's testimony that she told Agent Griego that she wanted to remain silent and did not want to answer his questions. *See Milke v. Ryan*, CV98-60-PHX-RCB, 2010 WL 383412 (D. Ariz. Jan. 29, 2010), citing *United States v. Dagnan,* 293 Fed. Appx. 205, 206–207, 2008 WL 4280024 (4th

Cir. 2008) (upholding court's credibility assessment, explaining that "[t]he district court had the opportunity to observe the witnesses, listen to their testimony, and was in the best position to make the credibility finding."); *see also United States v. Sealey,* 830 F.2d 1028, 1032 (9th Cir. 1987), *disapproved of on other grounds by United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997) (finding that "[w]hen findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings.").

### 2.   *Voluntariness*

Defendant Sanchez-Avitia objects to the Magistrate Judge's conclusion that her statements were voluntary, asserting that Agent Guido threatened to take her children and immigration papers away if she did not cooperate.[9] (Doc. 86 at 6.)

The government has the burden to prove that a statement was voluntary by a preponderance of the evidence. *See United States v. Bautista,* 362 F.3d 584, 589 (9th Cir. 2004). The Supreme Court has determined that coercive police activity is a necessary predicate to a finding that a confession is not voluntary. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986). "In evaluating voluntariness, the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Bautista,* 362 F.3d at 589 (internal citation omitted). In considering the totality of the circumstances, factors to consider include the presence of any police coercion, the length of the interrogation, its location and its continuity, whether the police advised the suspect of her rights, and whether there were any direct or implied promises of a benefit. *Clark v. Murphy,* 331 F.3d 1062, 1072 (9th Cir. 2003). "In short the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort." *Haynes v. State of Washington,* 373 U.S. 503, 513–14 (1963). A promise only

---

[9] Sanchez-Avitia cites case law regarding promises to communicate a suspect's cooperation to the prosecutor, but she fails to develop this argument and does not state how the agents in this case allegedly coerced her statements with such promises. (Doc. 86 at 8-9.) As such, the Court will disregard this aspect of her objection.

vitiates consent if it is "sufficiently compelling to overbear the suspect's will in light of all attendant circumstances." *United States v. Leon Guerrero,* 847 F.2d 1363, 1366 (9th Cir. 1988). A statement by officers that a defendant may help himself by speaking with law enforcement does not render a defendant's subsequent statements involuntary. *See United States v. Okafor,* 285 F.3d 842, 847 (9th Cir. 2002).

Considering the totality of the circumstances, the Court finds the Government has met its burden to prove Sanchez-Avitia's statements were voluntary by a preponderance of the evidence. *See Bautista,* 362 F.3d at 589. The record in this case shows no evidence of police coercion. Sanchez-Avitia was questioned in an office trailer located at the checkpoint. (TR 2/20/14 at 129.) She was not placed in a cell or a holding facility, and the room had a desk, chairs, and two exits. (*Id.*) Sanchez-Avitia was not handcuffed and her interrogation lasted no longer than 90 minutes. (RT 3/10/14 at 37, 122.) Sanchez-Avitia was advised of her rights prior to questioning, and the Court finds she knowingly and intelligently waived those rights. (RT 2/20/14 at 130.) Additionally, while Agent Ramirez told Sanchez-Avitia to tell the truth, imploring a suspect to tell the truth does not render a suspect's statements involuntary. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997) *overruled on other grounds by United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014). The record in this case shows no "improper inducement" so that [Sanchez-Avitia's] will was overborne." *Bautista,* 362 F.3d at 589 (internal citation omitted). Sanchez-Avitia's testimony that agents threatened to take her immigration papers and her children if she did not cooperate is not credible. Accordingly, Sanchez-Avitia's objections are overruled.

## CONCLUSION

After an independent review of the parties' filings, the transcript of hearing, and the Court's own hearing,

**IT IS HEREBY ORDERED** that:

1. The Report and Recommendation (Doc. 68) is **ACCEPTED AND ADOPTED** as the conclusions of this Court.

2. The Supplemental Report and Recommendation (Doc. 119) is **ACCEPTED IN PART AND DENIED IN PART** as follows. The Court adopts all credibility determinations of the Magistrate Judge except the finding that Defendant Sanchez-Avitia told Agent Griego that she did not want to answer questions.

3. Defendants Tapia-Moreno and Sanchez-Avitia's Motions to Suppress (Docs. 22, 23, 43, 53, and 55) are **DENIED**.

Dated this 28th day of July, 2014.

*Jennifer Zipps*
Jennifer G. Zipps
United States District Judge